J-S02019-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DURRELL JOHNSON, | |
| Appellant | No. 33 EDA 2014 |

Appeal from the Judgment of Sentence of May 30, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006498-2012

BEFORE:  MUNDY, OLSON and WECHT, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 03, 2015**

Appellant, Durrell Johnson, appeals from the judgment of sentence entered on May 30, 2013, following his jury trial convictions for two counts of attempted murder, two counts of aggravated assault, carrying a firearm without a license, and carrying a firearm on the streets of Philadelphia.[1] Upon review, we affirm his convictions, but remand for resentencing.

The trial court aptly set forth the facts of this case as follows:

> On February 21, 2012, around 2:00 p.m., Kevin Vancliff and his pregnant girlfriend, Michelle Page, were walking in the area of 23rd and Latona Streets in Philadelphia.  Nearby, Sakhadin Slomidze, a bricklayer, was laying bricks. Suddenly, [Appellant] exited from a green Pontiac driven by

_____

[1] 18 Pa.C.S.A. §§ 901, 2702, 6101, and 6108, respectively.  Appellant also pled guilty, in a separate proceeding, to persons not to possess a firearm. 18 Pa.C.S.A. § 6105.

his co-conspirator, Preston Worthem, pulled out a gun, and fired it five times. [Appellant] struck Kevin Vancliff in the back and Sakhadin Slomidze in the buttocks and the wrist. Once the shooting started, Mr. Vancliff pushed [] Michelle Page [] down onto the ground and then ran away. Ms. Page witnessed [Appellant] firing the gun and jumping into the green Pontiac, which then fled the scene. So terrified and traumatized was Ms. Page, that she urinated on herself, went into false labor after giving police a statement and was rushed to the hospital.

Ms. Page told police that she had known [Appellant] since she was twelve years old and positively identified [Appellant] from a police photo array as the man who shot Mr. Slomidze and Mr. Vancliff. Ms. Page identified the co-conspirator as the man who was driving the green Pontiac. She told police that she had seen both defendants in a green Pontiac about five minutes before the shooting. Police found five spent shell casings where the shooting took place. A corner store nearby the shooting had a video camera which showed the green Pontiac matching the description given by Ms. Page turning down Latona Street shortly before the shooting occurred. On February 22, 2012, police stopped a green Pontiac containing both [Appellant] and his co-conspirator.

Trial Court Opinion, 6/30/2014, at 3-4 (record citations omitted).

Procedurally, the case progressed as follows:

On March 26, 2013, a jury [] found [Appellant] guilty of [all of the aforementioned charges, except persons not to possess a firearm]. By agreement, [the trial court] found [Appellant] guilty of [persons not to possess a firearm] because the jury convicted him of weapons offenses. On May 30, 2013, [the trial court] sentenced [Appellant] to consecutive terms of imprisonment of ten (10) to twenty (20) years [of] incarceration for each [a]ttempted [m]urder [conviction], five (5) to ten (10) years [of] incarceration for [persons not to possess a firearm] to run consecutive to the [a]ttempted [m]urder sentences. The remaining sentences of four (4) to eight years [of] incarceration for [c]arrying a [f]irearm [w]ithout a [l]icense and one (1) to two (2) years [of] incarceration on [c]arrying [a] [f]irearm [on the streets

- 2 -

of] Philadelphia were to run concurrent with [the persons not to possess a firearm conviction]. The total sentence equals twenty-five (25) to fifty (50) years [of] incarceration[. …] On June 5, 2013, [Appellant] filed a [m]otion for [r]econsideration of [s]entence. On June 28, 2013, [Appellant] filed a [n]otice of [a]ppeal, which was subsequently quashed by [this Court] as interlocutory on October 28, 2013. On October 31, 2013, [Appellant's] [m]otion for [r]econsideration of [s]entence was denied by operation of law. On that same day, [Appellant] filed another [n]otice of [a]ppeal.

On January 2, 2014, [the trial court] issued a [Pa.R.A.P.] 1925(b) order. [After a series of extensions, Appellant filed a Rule 1925(b) concise statement of errors complained of on appeal, raising two issues. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on June 30, 2014.]

*Id.* at 1-2 (record citations and footnotes omitted).

On appeal, Appellant presents the following issues for our review:

A. Was Appellant's conviction against the weight of the evidence?

B. Did the trial court issue a greater sentence than necessary?

Appellant's Brief at 3 (complete capitalization omitted).

In his first issue presented, Appellant contends that his conviction was against the weight of the evidence. Appellant's argument, in its entirety, is as follows:

Here, the trial court's conviction of Appellant was against the weight of the evidence presented at trial. The entirety of the Commonwealth's case rested on the nontestimony of [Michelle] Paige. Paige was shown to have lied from the inception of the investigation. She was shown to be noncompliant at every turn with the investigation and the Commonwealth. The description she gave of Appellant

was inaccurate. All of these issues lead to the belief that every story that she gave was not to be believed. This is especially true given that the actual victim, Vancliff, testified and even gave a statement that the shooter's face was obscured, either by a hoodie or by a mask. One must question how Paige in her statement could have stated that she saw Appellant when Vancliff was the first to notice his shooter and the face was already obscured. Then she allegedly knew Appellant for at least one full decade, in her statement to police, she indicated that Appellant had tattoos. [Appellant] testified that this was just not true. Appellant had no tattoos. If she [] immediately started her interview with police by lying, she was completely off target with her description of Appellant, and her version of events is the only one that puts a face to a man whose face was obscured, then her entire version of events must be discredited. As her testimony is the only evidence that could be used to convict Appellant, his conviction should be overturned as it "shock[s] one's sense of justice[.]"

*Id.* at 17-18.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence***.* Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial

based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, [our Supreme Court has] explained:

> The term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations and quotations omitted) (emphasis in original).

Here, the trial court concluded:

> In the instant case, the jury heard testimony from both victims that they were shot at 23rd and Latona Street. Although Mr. Vancliff testified at trial that he could not identify the shooter because the shooter was wearing a hood, and Ms. Paige was not present to testify at trial, Ms. Paige's prior signed statement and the police photo arrays she signed during an interview with police clearly identified [Appellant] as the shooter. Ms. Paige's recollection in her prior statement about the green Pontiac being in the area minutes before the shooting took place was corroborated by the video from the corner store. Given the verdict, the jury obviously credited the Commonwealth's case. Thus, the verdict could hardly be said to shock one's sense of justice and was fully consistent with the totality and weight of the evidence presented.

Trial Court Opinion, 6/30/2014, at 4-5.

Upon review, we discern no abuse of discretion by the trial court in denying relief on Appellant's weight of the evidence claim. Here, although Ms. Paige was unavailable for trial, the jury heard her prior statements to police and was permitted to view her selection of Appellant from a photographic array. *See* N.T., 3/22/2013, at 14-16, 18-19. Ms. Paige knew Appellant from childhood. *Id.* at 17-18. She saw him five minutes prior to the shooting in a green Pontiac. *Id.* at 20, 23. Ms. Paige stated that she saw Appellant shoot five or six shots in her direction, get into a green Pontiac, and speed away. *Id.* at 15-16. Mr. Vancliff testified, and told police in an earlier statement, that his shooter was a black male, 5' 9" who was wearing a black hooded sweatshirt. N.T., 3/20/2013, at 70. Appellant matched that description. N.T., 3/22/2013, at 109. Detective Eric Johnson interviewed Ms. Paige and reviewed a video recovered from a store nearby to determine that a green Pontiac was in the area at the time of the shooting. *Id.* at 54-55. The day after the shooting, police stopped a green Pontiac and Appellant and his co-defendant were arrested. *Id.* at 60-65.

Based upon the foregoing, the verdict does not shock one's sense of justice. The jury was free to make credibility determinations based upon the evidence before them. *See Commonwealth v. Diggs*, 949 A.2d 873, 879 (Pa. 2008) ("The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses."). Therefore, the trial court did not abuse its discretion in denying Appellant relief on his

weight of the evidence claim. Hence, Appellant's first issue presented lacks merit.

In his second issue presented, Appellant claims that his sentence was manifestly excessive. Appellant's Brief at 18-19. We find this issue waived. When challenging the discretionary aspects of a sentence, the Pennsylvania Rules of Appellate Procedure require that:

> An appellant who challenges the discretionary aspects of a sentence in a criminal matter **shall** set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement **shall** immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

Pa.R.A.P. 2119(f) (emphasis added). Here, Appellant failed to include the requisite Rule 2119(f) statement. "A failure to include the Rule 2119(f) statement does not automatically waive an appellant's argument; however, we are precluded from reaching the merits of the claim when the Commonwealth lodges an objection to the omission of the statement." *Commonwealth v. Bruce*, 916 A.2d 657, 666 (Pa. Super. 2007) (citation omitted). In this case, the Commonwealth objected to Appellant's omission. *See* Commonwealth's Brief at 18. Thus, we are precluded from reaching the merits of Appellant's discretionary sentencing claim.

Finally, the trial court requests *sua sponte* that this Court vacate Appellant's judgment of sentence and remand for re-sentencing due to

errors that occurred, unrelated to this appeal, resulting in the imposition of an illegal sentence:

> In reviewing the record, [ ] the trial court] notes *sua sponte* that two errors occurred with the imposed sentence. The first is that the four (4) to eight (8) year concurrent sentence for [c]arrying a [f]irearm [w]ithout a [l]icense is an illegal sentence, as it exceeds the seven (7) year maximum for a felony of the third degree. 18 Pa.C.S. § 1103(3). Secondly, at the sentencing hearing [the trial court] stated on the record that the sentence for [c]arrying a [f]irearm [w]ithout a [l]icense should run concurrent to the [persons not to possess a firearm] sentence. N.T., 5/30/2014, at 32. However, the sentencing order specifies that the sentence on the two charges was to run consecutive[ly]. Therefore, [the trial court] requests that [this Court] vacate the judgment of sentence and remand for re-sentencing.

Trial Court Opinion, 6/26/2014, at 5-6. Upon review, we agree. Thus, while we deny Appellant relief on his presented claims, we vacate his judgment of sentence and remand for re-sentencing only for the trial court to correct the sentencing errors as set forth above.

Convictions affirmed. Judgment of sentence vacated. Remanded for re-sentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/3/2015